UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>SHAPOUR MOINIAN,<br><br>Defendant. | Case No. '21 MJ3884<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 18, U.S.C., Sec. 1001 – False Statements |
|---|---|

The undersigned complainant, being duly sworn, states:

<u>Count 1</u>

On or about July 7, 2017, in the Southern District of California, the defendant, SHAPOUR MOINIAN, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: a Questionnaire for National Security Background Investigations, did knowingly and willfully make materially false, fraudulent, and fictitious statements and representations, when MOINIAN represented and stated that:

(1) He had not had close or continuing contact with a foreign national within the last seven (7) years; and

(2) He had not been asked to work as a consultant, or consider employment by a foreign national within the past seven (7) years.

1

All in violation of Title 18, United States Code, Section 1001.

## Count 2

On or about March 12, 2020, in the Southern District of California, the defendant, SHAPOUR MOINIAN, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: a Questionnaire for National Security Background Investigations, did knowingly and willfully make materially false, fraudulent, and fictitious statements and representations, when MOINIAN represented and stated that:

(1) He had not had close or continuing contact with a foreign national within the last seven (7) years; and

(2) He had not been asked to work as a consultant, or consider employment by a foreign national within the past seven (7) years.

All in violation of Title 18, United States Code, Section 1001.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

John Miller, Special Agent
Federal Bureau of Investigation

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1., this 4th day of October 2021.

Hon. Andrew G. Schopler
United States Magistrate Judge

# AFFIDVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

## I. INTRODUCTION

This affidavit is submitted in support of a criminal complaint relating to SHAPOUR MOINIAN (hereafter "MOINIAN"). There is probable cause to believe that MOINIAN made false statements, in violation of Title 18, United States Code, Section 1001, during his National Security background checks in 2017 and 2020 by the United States Government as it relates to his contact with foreign businesses and individuals.

MOINIAN is a former helicopter pilot with the United States military, having served in the United States, Germany, and South Korea, from approximately 1977 through 2000. After his service, MOINIAN eventually entered the private sector and has worked on proprietary and classified projects at various cleared defense contractors in the United States.

As part of that work, MOINIAN was granted a security clearance by the United States Government conditioned upon continuous background checks. As part of these background checks, MOINIAN was routinely questioned about his contacts with foreign nationals and businesses. MOINIAN repeatedly lied about and failed to disclose his numerous contacts with at least one Chinese national and business. These contacts, occurring over several years, included electronic messaging, meetings in foreign countries, and cash payments funneled through his stepdaughter's South Korean bank account. All of this occurred while MOINIAN continued to access and work on proprietary and classified projects with the defense contractors employing him, as well as receiving proprietary information from at least one other individual working at another cleared defense contractor.

## II. AFFIANT'S BACKGROUND

I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since 2006. I am currently assigned to a Counterintelligence Squad of the San Diego Field Office.

Before I joined the FBI, I received a Bachelor of Arts degree in Political Science from Norwich University in Vermont in 1995. After graduating, I joined the United States Army where I served as an infantry officer for 11 years before joining the FBI in 2006.

As a Special Agent, I received basic federal law enforcement training at the FBI Academy in Quantico, Virginia. My training at the FBI Academy included instruction in how to conduct searches in accordance with the Fourth Amendment, the drafting of search warrant affidavits, and the proper application of the probable cause standard. During my tenure as an agent, I have undertaken additional training focused on counterintelligence activities, including the FBI's Counterintelligence Investigations and Operations Course.

Since 2008, I have been investigating counterintelligence matters, including espionage, economic espionage, theft of trade secrets, and other proliferation of sensitive, classified, and/or controlled information, as well as various ancillary criminal activity. My current assignment focuses on such activities being undertaken at the direction of Intelligence Officers serving the People's Republic of China. Through my training and experience, as well as through discussions with other law enforcement agents, I have become familiar with the illicit proliferation of sensitive technology, related laws, and the interpretation and application of those federal laws. These investigations have called for my participation in various searches, including the search of homes, offices, and electronic media. In addition, I have employed many other investigative techniques, including interviews of subjects, witnesses, and the use of confidential informants and undercover operations, as well as physical and electronic surveillance.

The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other FBI special agents and other law enforcement officers with decades of experience; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of

4

the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. The dates, times, and amounts discussed herein are approximate. Where the content of records and the actions, statements, and conversations of others are described, they are described in sum and substance and in part, except where otherwise indicated. If the Court would like to see any of the specific communications, including emails exchanged, they can be made available.

## III. RELEVANT BACKGROUND ON CHINESE INTELLIGENCE AND RECRUITMENT EFFORTS

In late 2017, Germany's Federal Office for the Protection of the Constitution ("Bundesamt für Verfassungsschutz" or "BfV") publically disclosed that it had documented extensive use of social media platforms by Chinese intelligence agencies to recruit assets in other countries. According to its report, released in December 2017, one of the favored platforms for this type of recruitment by Chinese intelligence agencies was a popular American online employment service. In doing so, Chinese intelligence services would register profiles with this online service where individuals disguised themselves as employees of headhunting agencies, consulting firms, and other similar entities. One of the agencies the BfV identified as a front for Chinese intelligence efforts in this regard was DRHR out of Hangzhou City, Zhejiang, China.

## IV. CURRENT INVESTIGATION

In May 2015, while working as an engineer at Cleared Defense Contractor A, MOINIAN requested to connect with Conspirator A via the same online employment service referenced above, Conspirator A's profile advised that she was an Executive Manager at DRHR in Hangzhou, Zhejiang, China.

Conspirator A accepted and asked if MOINIAN was interested in "part-time consultancy offer for our projects. If so, we can have a further discussion." MOINIAN responded, "Yes, Yes, and Yes :)" Two days later, Conspirator A indicated that a part-time consultancy may be possible, but would require MOINIAN to travel to China for interviews. According to Conspirator A, the costs would be covered by her company.

MOINIAN initially asked where and when, but then advised that his security clearance prevented him from supporting "non US Person or Companies." Despite this, Conspirator A suggested the two remain in contact via both the online employment service and email.

In June 2016, Conspirator A requested to connect with MOINIAN through the online employment service using a different name. According to Conspirator A's profile, she was a Technical Recruiter at LinkTek Technical Services, located in Hangzhou City, Zhejiang, China. In her messages to MOINIAN, she noted that he worked for a defense contractor, and offered him an opportunity to consult in the aviation industry. At the time, MOINIAN was still working at Cleared Defense Contractor A.

Conspirator A continued that MOINIAN's "rich experiences and skills" were appealing to her client working on aircraft design where MOINIAN could provide "guidance" and the "pay rate is all negotiable, depending on the results." Conspirator A suggested that MOINIAN travel to China and afterward, he could "bring back and finish the project, provide some remote consulting." Conspirator A advised that any costs of the trip would be covered.

In December 2016, MOINIAN transferred to Cleared Defense Contractor A's offices in San Diego, California.

Between March 26, 2017, and March 31, 2017, MOINIAN traveled to Hong Kong. Following his visit to Hong Kong, MOINIAN began communicating with Conspirator A via an email account and at least one other application on MOINIAN's phone. At one point, Conspirator A emailed that she missed him, referring to him as "S," and further instructed, "Please check your phone and reply the message that I sent you." Based on the investigation to date, and the experience of those involved in this investigation, it is believed that MOINIAN and Conspirator A were communicating via an encrypted application on MOINIAN's cellphone. Moreover, agents believe that MOINIAN had agreed to work for Conspirator A as made clear in later communications below.

In late May 2017, Conspirator A emailed MOINIAN and asked how things were going, and would be happy to hear anything new from his side. MOINIAN responded

6

that he was "50% done with my project," and was "looking forward to have some time off in September too." Conspirator A responded that everything will go smoothly and "let's wait for the coming September." MOINIAN advised he would purchase his tickets in June. In their messages, MOINIAN referred to Conspirator A as "C" and Conspirator A talked of missing MOINIAN. MOINIAN lamented, "After our three days visit I have to visit my wife's family in Korea :( and not looking forward to visiting all of them because of language and culture." Based on the messages exchanged, and the messages that followed, it is believed that MOINIAN and Conspirator A were planning to meet again. On September 7, 2017, MOINIAN flew to South Korea, with a stopover in Shanghai, China. At the time, MOINIAN's stepdaughter was believed to reside in South Korea. TECS records indicate MOINIAN departed Seoul/Inchon airport in South Korea and returned to Los Angeles on September 20, 2017.

In June 2017, MOINIAN and Conspirator A communicated via both email and text messages. During these exchanges, Conspirator A referenced that she lived close to or in Shanghai, and would enjoy being MOINIAN's "host and show [sic] around the city." According to Conspirator A, the two of them were "going to meet during vacation" at a later date. On June 30, 2017, MOINIAN emailed Conspirator A that he was filing for divorce from his wife.

Seven days later, on July 7, 2017, MOINIAN electronically submitted through e-QIP his completed SF-86 questionnaire for his national security clearance background check. Section 19, entitled "Foreign Contacts," asked, "Do you have, or have you had, close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or obligation?" MOINIAN answered, "No."

Section 20B, entitled "Foreign Business, Professional Activities, and Foreign Government Contacts, asked, "Has any foreign national in the past seven (7) years offered you a job, asked you to work as a consultant, or consider employment with them?" MOINIAN answered, "No."

Before submitting the SF-86, MOINIAN certified as follows: "My statements on this form, and on any attachments to it, are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I have carefully read the foregoing instructions to complete this form. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both (18 U.S.C. 1001). I understand that intentionally withholding, misrepresenting, or falsifying information may have a negative effect on my security clearance, employment prospects, or job status, up to and including denial or revocation of my security clearance, or my removal and debarment from Federal service."

The SF-86 instructions page also warned MOINIAN that "All questions on this form must be answered completely and truthfully in order that the Government may make the determinations described below on a complete record. Penalties for inaccurate or false statements are discussed below." In the section entitled "Penalties for Inaccurate or False Statement," the instructions advised, "The U.S. Criminal Code (title 18, section 1001) provides that knowingly falsifying or concealing a material fact is a felony which may result in fines and/or up to (5) years imprisonment."

The instructions further stated, "This form will be used by the United States (U.S.) government in conducting background investigations, reinvestigations, and continuous evaluations of persons under consideration for, or retention of, national security positions."

Finally, under the section of the SF-86 entitled "Statement of understanding," MOINIAN affirmatively answered that "I have read the instructions and I understand that if I withhold, misrepresent, or falsify information on this form, I am subject to the penalties for inaccurate or false statement[s] (per U.S. Criminal Code, Title 18, section 1001)." Because MOINIAN had failed to disclose his relationship with Conspirator A and his work on her behalf, MOINIAN's answers as provided above were materially false.

  In August 2017, Conspirator A messaged MOINIAN asking if he utilized various encrypted messaging platforms. Conspirator A said she wanted to share her "vacation plan next month," and believed those applications were more efficient. In light of this message, and earlier messages, I believe that Conspirator A and MOINIAN were communicating and continued to communicate over mobile applications during this time period as well.

  On September 7, 2017, MOINIAN traveled to South Korea via Shanghai, where he stayed until his return to Los Angeles on September 20, 2017. After his return from South Korea, MOINIAN received three separate wire transfers from his stepdaughter's bank account in South Korea, $3000 on October 11th, $3000 on October 12th, and $1600 on October 18th. Given the investigation to date, agents believe that Conspirator A was providing payment to MOINIAN via his stepdaughter's bank account in South Korea for services rendered to Conspirator A.

  MOINIAN and Conspirator A continued to email back and forth into March 2018, where they talked of seeing each other soon. At the end of March, MOINIAN traveled from Los Angeles to Hong Kong, and returned approximately 10 days later on April 10, 2018. That same month, after returning from this trip, MOINIAN conducted various open-source searches related to "sabotage vs spying," "espionage vs sabotage," and "selling military information to foreign country is considered as."

  The following month, on May 29, 2018, MOINIAN started working as a Senior Principal Systems Engineer for Cleared Defense Contractor B. Three days later, on June 1, 2018, MOINIAN received a wire transfer from his stepdaughter's bank in South Korea for $7846.76. The second transfer in this series occurred on July 12, 2018, for $3888.99; and the final wire occurred on August 20, 2018, for $2600.

  On June 24, 2019, MOINIAN emailed Conspirator A that a friend was in financial distress, and requested she loan him $20,000. According to MOINIAN, Conspirator A could "send it to my Korean family as usual in three deposits."

On October 1, 2021, MOINIAN's stepdaughter confirmed that MOINIAN told her that he needed to have funds wired into her bank account in South Korea, which she was to then wire to him in the United States. These funds were for "consulting work" according to MOINAIN when telling his stepdaughter that these payments needed to be funneled through her bank account in South Korea.

On October 1, 2021, MOINIAN's wife advised that he met often with Conspirator A and/or her colleagues in various countries, including China, Taiwan, Bali, and South Korea, where he would receive cash payments in addition to the payments that were funneled through his stepdaughter's South Korean bank account. These trips occurred between 2017 and 2019. MOINIAN's wife stated that he would have the two of them split the cash payments between them and either carry the money back to the United States on their persons or in their luggage.

In addition to receiving cash payments from Conspirator A, MOINIAN was also provided a phone by Conspirator A during a trip to Hong Kong. According to his wife, MOINIAN communicated with Conspirator A using various encrypted mobile platforms and via email.

On March 12, 2020, MOINIAN electronically submitted through e-QIP his completed SF-86C questionnaire for his national security clearance background check. In Block 2, MOINIAN answered multiple questions regarding any change in circumstance to his most recent SF-86 questionnaire referenced previously. The SF-86C instructed, "If you report no change to a Question, place an 'X' in the NO box. If there is a change, place an 'X' in the Yes box. All Yes answers must be explained…." For Questions 19 and 20, "Foreign Contacts" and "Foreign Activities," MOINIAN answered that there had been no change since the information he previously provided in his 2017 SF-86 referenced above, which he submitted on July 7, 2017.

Before submitting the SF-86C, MOINIAN certified as follows: "I certify that the above information includes all changes to my most recent SF 86 or since my last investigation. Changes, if any, are explained under Block 3. My statements on this form,

and on any attachments to it, are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both (18 U.S.C. 1001). I understand that intentionally withholding, misrepresenting, or falsifying information may have a negative effect on my security clearance, employment prospects, or job status, up to and including denial or revocation of my security clearance, or my removal and debarment from Federal service." Because MOINIAN again failed to disclose his ongoing relationship with Conspirator A and his work on her behalf, MOINIAN's answers as provided above were materially false.

On October 1, 2021, at approximately 10:08 am, MOINIAN was arrested.

## V. CONCLUSION

Based on the investigation to date, I believe that from at least 2017 through 2019, MOINIAN was actively working with Conspirator A, who publicly identifies as an employee of a Chinese business based in China, and receiving payment for services rendered. In light of his significant contact with Conspirator A, his travel to China to meet with Conspirator A, and his receipt of multiple cash payments and additional phone used for contact with Conspirator A, I assert there is probable cause to believe that MOINIAN knowingly and willfully misrepresented his foreign contacts and activities when completing his national security questionnaire in both 2017 and 2020.

Executed on October 2, 2021 at 2310 hours.

John Miller, Special Agent
Federal Bureau of Investigation

On the basis of the facts presented in this probable cause statement consisting of 11 pages, I find probable cause to believe the defendant, Shapour MOINIAN, named in this probable cause statement committed the offenses on July 17, 2017, and March 12, 2020, in violation of Title 18, United States Code, Section 1001, False Statements.

**11:41 PM, Oct 2, 2021**

Hon. Andrew G. Schopler
United States Magistrate Judge